1   Charles F. A. Carbone, Esq.  (SBN 206536)
2   LAW OFFICES OF CHARLES CARBONE
    3128 16TH Street
3   PMB 212
    San Francisco, CA 94103
4   Tel: 415-981-9773
5   Fax: 415-981-9774

6

7

8                    UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10  In re DANIEL DAVID,              )   CR02-0062 SI
11          Petitioner,              )   CR07-04081 SI
    v.                               )
12                                   )
    Harley G. Lappin, Director of BOP, )   **PETITIONER'S TRAVERSE**
13                                   )   **TO RESPONDENT'S RESPONSE**
                                     )   **ON MOTION TO VACATE SENTENCE**
14                                   )
            Respondent.              )
15                                   )
                                     )
16                                   )
                                     )
17  _____  )

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.      INTRODUCTION...............................................................................1

II.     ARGUMENT....................................................................................2

  (a) Legal Standard for Collateral Review of David's Claims............................2

  (b)  David's <u>Brady</u> claims and newly discovered evidence meet all three (3) of the
      exception requirements to be heard via a collateral appeal............................3

  (c)  David's <u>Brady</u> & Newly Discovered Evidence Claims Remain Valid...............5

  **(i)**      Facts Relevant to Both.....................................................5

  **(ii)**     David's <u>Brady</u> Claims Are Strengthened by the Government's Inability to Refute
            the  November 2006 Meeting David had with the FBI............................8

  **(iii)**    David's Claim of Newly Discovered Evidence Demonstrate that No Fraud
            Remains......................................................................8

  **(d)**      David's Claims of Insufficient Evidence Are Bolstered Since They Were Raised
            on Direct Appeal In light of the New Evidence Presented......................10

III. CONCLUSION..................................................................................10

1  Charles F. A. Carbone, Esq.  (SBN 206536)
2  LAW OFFICES OF CHARLES CARBONE
   3128 16TH Street
3  PMB 212
   San Francisco, CA 94103
4  Tel: 415-981-9773
5  Fax: 415-981-9774

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10 In re DANIEL DAVID,            )    CR02-0062 SI
11        Petitioner,             )    CR07-04081 SI
   v.                             )
12                                )
   Harley G. Lappin, Director of BOP,  )   **PETITIONER'S TRAVERSE**
13                                )    **TO RESPONDENT'S RESPONSE**
                                  )    **ON MOTION TO VACATE SENTENCE**
14                                )
          Respondent.            )
15                                )
                                  )
16                                )
                                  )
17

18   **I.      INTRODUCTION**

19
         Respondent's March 6, 2008, filing relies heavily, if not exclusively, on procedural
20
   arguments meant to avoid a review of David's claims on their merits.  Respondent asks the Court
21
   to ignore the merits of David's claims based on the flawed proposition that the claims are
22
   procedurally barred. In short, they are not.  David's claims are both excused from procedural
23
   default and are valid.  Moreover, Respondent's side-stepping of such claims is a clear indicator
24
   that Respondent's can not rebut the substance of David's arguments.
25 //

26

27
   //
28

                                                                                              1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.    ARGUMENT

### (a) Legal Standard for Collateral Review of David's Claims

Respondent relies heavily on United States v. Johnson (9th Cir. 1993) 988 F. 2d 931, 945, to argue that David's Brady violations and claims of newly discovered evidence are barred because David did not raise these issues on direct appeal.  *See* Respondent's brief at 7-8. Respondent, however, vastly over-states the reasoning of Johnson, and, of great importance, its application to David.

In truth, the correct standard permits claims to be heard on collateral review that were not reviewed on direct appeal when several exceptions warrant it:  (1)  where the legal or factual basis for the collateral review did not exist at the time of direct appeal;  (2) where interference from officials might have prevented the claim from being brought earlier; or (3)  where the defendant is actually innocent of the charges to which s/he was convicted.  *See*  U.S. v. Frady (1982) 456 U.S. 152, 167, 102 S.Ct. 1584 (holding that federal habeas review is barred unless there is cause or actual prejudice for the procedural default, or one can demonstrate that precluding review would result in a fundamental miscarriage of justice). These three[1] exceptions – unavailability, prejudice, or innocence – exist which permit a habeas petitioner to raise claims not raised on direct appeal.  *See* Schulp v. Delp (1995) 513 U.S. 298, 298-199, 115 S. Ct. 851; and Sistrunk v. Armenakis (9th Cir. 2002) 292 F. 3d 669, 672-673.  Moreover, any claim of actual innocence or miscarriage of justice need not demonstrate an absolute guarantee of a different outcome, but only that it is more likely than not that no reasonable juror would have convicted the petitioner.  *See* Downs v. Hoyt (9th Cir. 2000) 232 F. 3d 1031, 1041, and Majoy v. Roe (9th Cir. 2002) 296 F. 3d 770, 776 (holding that petitioner need not show that he is actually innocent of the crime he was convicted of, but that a court cannot have confidence in the outcome of his trial).

Respondent, however, self-servingly omits a discussion of circumstances involving a fundamental miscarriage of justice or actual innocence proven under newly discovered evidence when discussing the procedural demands placed on David.  Despite Respondent's neglect, these exceptions remain and are valid proof why David's claims may be heard.

---

[1] Not limited to the two – prejudice and unavailability – which Respondent cites.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### (b)  David's <u>Brady</u> claims and newly discovered evidence meet all three (3) of the exception requirements to be heard via a collateral appeal.

David raised a <u>Brady</u> claim that the government withheld evidence that the long distance ("LD") carriers were beneficiaries, rather than victims;  and that such evidence was newly discovered evidence which undermines the validity of the conviction.  *See* Petition at 13. The government tries to procedurally default each claim. *See*  Respondent's Brief at 3-8.

Both claims deserve collateral review, and both are intertwined because David learned about each during the same set of events. First, David learned at sentencing when both he and the court first heard the government's admission that the LD carriers were beneficiaries in the eyes of the prosecution.  *See* Sentencing Transcript (ST) at 17.  Second, this admission was confirmed when David and his attorney John Kirke, Esq., met personally with FBI Agent Coffin who told the two that the government had long known that the LD carriers were beneficiaries, not victims. *See* Declarations of David & Kirke, attachments to Petition.  These critical government admissions were not fully confirmed until November 20, 2006, well-after David's direct appeal efforts were underway.[2]  As stated earlier, the unavailability of the factual or legal claims is a bona-fide exception to the requirement that all claims be advanced on direct appeal.  *See* <u>Schulp</u>, *supra* at 316 & 327;  and <u>Carringer v. Stewart</u> (9th Cir. 1997) 134 F. 3d 463, 478.  David's case falls neatly into this category because he learned of the factual and legal basis from the FBI and the AUSA when his appeal efforts were well underway.

The factual basis of the claims was also unavailable at the time of the appeal.  David received confirmation that the government withheld evidence when he met with the FBI in an informal meeting on November 6, 2006.  Notably, Respondent's Brief failed to contest this meeting or its contents.  David also learned of the government's acknowledgement over the true status of the LD carriers as beneficiaries at sentencing.  While it was acknowledged that the government's position on the carriers had changed, David did not learn until three (3) months into his appeal efforts on November 6, 2006, that the FBI and others in the prosecution had known this fact since nearly the inception of the case.  *See* Declarations of David and Kirke, attachments to Petition.

---

[2] David met with the FBI on November 20, 2006, and his appeal before  the 9th Circuit Court of Appeals was submitted (fully briefed) on August 9, 2006.

3

1   David's two clams also meet the requirement that officials interfered with his claims

2   being brought earlier.  Both his <u>Brady</u> and newly-discovered evidence claims, by definition,

3   imply that government officials interfered with the airing of evidence of the LD carriers as

4   beneficiaries, not victims.  For a <u>Brady</u> claim to survive, David is required to show that the

5   prosecution suppressed material evidence favorable to the defendant.  *See* <u>Brady v. Maryland</u>

6   (1963) 373 U.S. 83, 87, 83 S.Ct. 1194; and <u>U.S. v. Streit</u> (9th Cir. 1992) 962 F. 2d 84, 900.  And

7   for a newly discovered evidence claim to withstand judicial scrutiny, the same holds true –

8   namely, that this evidence was not previously available.  *See* <u>Swan v. Peterson</u> (9th Cir. 1993) 6

9   F. 3d 1373, 1384.  Both claims imply that the government prevented the unveiling of this

10  evidence.  David's Petition laid out in detail that the government withheld evidence that it knew

11  that the LD carriers were neither victims or proper recipients of restitution until literally the last

12  available moment in David's criminal proceeding before the trial court.  *See* Petition at 11-12

13  and Sentencing Transcript "ST" at 17, dated May 6, 2005.

14      For example, as set forth in the Petition, the same AUSA Ms. Stacey P. Geis, Esq., who

15  admitted that the LD carriers were beneficiaries at David's sentencing did not reveal this fact at

16  David's co-defendant's sentencing hearing held just five months prior.[3]   This alone is strong

17  evidence that the government was not forthcoming, and went as far as interfering with the LD

18  carriers as beneficiaries coming to light.  As stated, such interference is grounds for excepting an

19  otherwise procedural default.  *See* <u>Braswell</u>, *supra.*

20      And third, David's claims may be heard where the failure to consider the claims will result

21  in a fundamental miscarriage of justice often defined as when it is more likely than not that no

22  reasonable juror would have found petitioner guilty beyond a reasonable doubt.  *See*  <u>Majoy v.</u>

23  <u>Roe</u>, *supra*; and <u>Vansickel v. White</u> (9th Cir. 1999) 166 F. 3d 953, 958-959.  This "actual

24  innocence gateway" is permitted even where  the jury could still have found David guilty, and

25  only requires that it is more likely than not that no reasonable juror would have found David

26  guilty.  *See* <u>Van Buskirk v. Baldwin</u> (9th Cir. 2001) 265 F. 3d 1080, 1084.  Hence, David is not

27  required to show that he is actually innocent of the charges, but merely that the consideration of

28  the LD carriers as beneficiaries was more likely than not to sway a juror toward a not-guilty

finding.  <u>Id</u>.  Under this exception, David can easily demonstrate that the LD carriers as victims

was material to the conviction.  The best evidence of the materiality of the LD carriers as

---

[3] Nisbet's sentencing hearing was held of January 14, 2005.

4

1  supposed victims was the government's continual reliance on this falsehood throughout the trial

2  as pointed out in the Petition at 19 and at RT 822 & 824.

3  David's claims are not procedurally barred. His habeas claims are proper because he did

4  not have the proper factual and legal basis for the claims on direct appeal; a fact not aided by the

5  government's resistance to the airing of the facts underlying his claims; and that the claims

6  challenge the fundamental fairness of a verdict that was considered and decided without

7  knowing the true status of those portrayed as victims.

8

**(c)  David's <u>Brady</u> & Newly Discovered Evidence Claims Remain Valid.**

9

**(i)  Facts Relevant to Both**

10

11  It is critical for the court to bear in mind facts relevant to David's <u>Brady</u>

12  claims and those relevant to his claims of newly discovered evidence. This is especially true

13  because each claim relies on a set of intertwined facts. Numerous facts support the contention

   that the government withheld the fact that the telcos made money, rather than standing in the

14  shoes of actual victims:[4]

15

16  (1)  The prosecution at trial relied heavily on the theory that the LD carriers were

   beneficiaries. The prosecution argued in his opening and closing statement that the teleco's were

17  victims. *See* RT at 822 & 824. This very prosecution's theory of the case, as presented directly

18  to the jury, cast the teleco's as victims of David's financial harm.

19  (2)  At trial, the teleco's testified on the witness stand and cast themselves as victims. Both

20  Sprint and AT&T officials took the stand as prosecution witnesses and cast themselves, with

21  support from the government, as victims. *See* RT at 428 (Sprint) and RT at 223 (AT&T).

22  (3)  The government's admission over the LD carriers at David's sentencing on May 6,

23  2006, was at extreme odds with its contrary position at co-defendant Nisbet's sentencing some

   five months prior although both were handled by the same government attorney. *See* ST,

24  *generally*. The notable absence at Nisbet's sentencing of the government admission made at

25

---

26  [4] Respondent mischaracterizes David's claims by stating, "David claim . . .that the government violated *Brady v.
   Maryland,* 373 U.S. 83 (1963) by failing to disclose, until the time of sentencing, that it was the toll-free subscribers

27  who actually lost money in this scheme, not the telephone companies." *See* Respondent brief at 3. This is not so.
   David did not claim that the government hid that the toll-free subscribers were the ones who actually lost money.

28  Instead, David argued that the government withheld that the LD carriers were *not* victims, and that these telecom's
   financially benefitted from David's conduct.

5

David's sentencing was attributable to the government hiding this admission unless confronted by it, as David's then lawyer Dennis Riordan did. *See* ST at 16-17. The difference between the LD carriers as the recipient of over $444, 000 in restitution ordered at Nisbet's sentencing and the same LD carriers not being entitled to a dime of restitution at David's sentencing was not a slight gaffe. It was part of the government's overall effort to disguise a fact not favorable to the prosecution until the last available moment.

(4) Respondent's tries to re-write the record by alleging that the LD carriers *were* identified as beneficiaries of David's conduct when the regulatory background was explained at trial by the prosecution. *See* Respondent's Brief at 6. This is a farce. The regulatory scheme at trial was indeed explained, and here is what was offered about the role and position of the LD carriers:

> "Now, ultimately Daniel David got caught. And the way he got caught is as follows . . . What you will hear is that AT&T saw very large checks. One check, in particular, was almost $150,000, although I think AT&T's part of that was only about $50,000. But a tremendous amount of checks to one individual." *See* RT at 171.

Plainly, there was no attempt to identify the LD carriers as financial beneficiaries. To the contrary, in the very record Respondent relied upon to educate the jury on the position of the LD carriers, these carriers were cast as parting with money because of David. As we all learned at sentencing, this was not true.[5]

(5) AT&T offered a government elicited victim impact statement for sentencing that, once again, cast it as a victim eligible for restitution funds. Not only was this wrong, but there is proof in the record that AT&T may have financially benefitted from David's conduct *long after* AT&T believed that the calls were not legitimate. According to AT&T testimony, AT&T was first alerted to the questionable calls on or near August 1999. And yet, AT&T did not take steps to stop billing its toll-free subscribers (with a considerable mark-up) until October 1999. *See* RT at 214 & 239. Therefore, it is clear that AT&T: (a) made significant sums of money from David's calling patterns by billing toll-free subscribers before AT&T became aware that the calls may be "questionable;" (b) AT&T continued billing toll-free subscribers *after* questions about the calls were raised for no less than three months;  and (c) there is evidence that AT&T did not

---

[5] Notably, the AUSA referred to AT&T being "unjustly enriched" as a result of David's conduct which would place AT&T in the category of a committing wrongdoing instead of being a victim. *See* ST at 17.

refund its toll-free customers for calls that AT&T went on record saying were unlawful. *See* RT at 229 & 238.

These facts remain uncontested. Respondent's brief was unable to discount or dismiss the error in AT&T submitting a victim impact statement when they were not actual victims. Moreover, while Respondent claims that "the record shows that the government did not present the long-distance carriers as having lost money as a result of David's acts" (*See* Respondent's Brief at 6), this claim is belied by the actual prosecutor's words at trial -- "although I think AT&T's part of that was only about $50,000" -- as well the AT&T victim impact statement. *See* RT at 171.

(6) Respondent's brief also makes an interesting admission that the government knew all along who was the true victim here. *See* Respondent's Brief at 5. Or stated more precisely, Respondent convolutes this admission slightly by stating that "as noted, the information that it was the toll-free subscribers who actually lost money in this scheme was clearly available to David during trial." *See* Respondent's Brief at 5. In fairness to the nature of David's collateral claims, he argues not about the toll-free subscriber, but instead focuses on the LD carrier as non-victim. If it is the government's belief that they made this information "clearly available" at trial – although David disputes this – there is an implicit admission that the government had this information throughout trial. The government now has admitted what David learned at sentencing and via the FBI agent, Coffin – namely, that the government knew AT&T and the other LD carriers were not victims throughout the entire trial. The only remaining dispute left is when did the government make this fact known to David and the Court? As argued in the Petition, David claims that he was just as surprised as the presiding judge when he learned at sentencing that the prosecution agreed (for the first time publicly) that the LD carriers were not victims and did not deserve restitution. A Brady violation requires the prosecution suppressed evidence material to the guilt or to the punishment. *See* Brady, *supra.* And here, that is exactly what David has proven by showing that the prosecution knew far in advance of answers to David's attorney's questioning whether the LD entities were victims. This evidence was withheld; it was material; and it was critical to the jurors' ability to decide whether David's conduct was illegal.

And (7) the new Order signed by this Court requiring the creation of a *cy pres* fund demonstrates that the Court no longer holds the LD carriers in the position of a victim. *See*

7

Amended Restitution Order dated November 15, 2005. The court's own rationale of having to change the recipients of the restitution from the LD carriers to an unascertainable class is a clear indication that this change came directly from the revelation admitted to by the prosecution that such an order of restitution would not be in keeping with the fact that AT&T and other telcos were beneficiaries. Indeed, the court was confronted by the same government revelation that David learned of, and was required to substantially re-fashion the restitution order accordingly.

**(ii)     David's <u>Brady</u> Claims Are Strengthened by the Government's Inability to Refute the  November 2006 Meeting David had with the FBI.**

Notably absent in the Respondent's Brief is a refutation that the FBI admitted that they had known from nearly the inception of the prosecution that AT&T was not a victim. *See* Declarations of David & Kirke. David offered two sworn declarations -- one at his hand and one authored by attorney John Kirke, Esq. -- who each attest to the contents of a meeting with FBI Agent Coffin who was said to admit that the FBI and prosecution knew that the LD carriers were not victims. Why did Respondent fail to rebut this evidence? Surely, if it was untrue, a simple declaration from FBI agent Coffin would have been offered. And yet, none was. This evidence is now without controversy, and it pins down the timing of the government's knowledge of the true position of the LD carriers to the beginning of the prosecution. For a <u>Brady</u> claim to survive, David had to prove favorable material facts were withheld. David has proven those facts were present because the government had indeed withheld the status of the telecommunications companies and the money they had reaped, not lost from David's conduct.

**(iii)     David's Claim of Newly Discovered Evidence Demonstrate that No Fraud Remains.**

On David's claims of newly discovered evidence, Respondent tries to dismiss this argument by suggesting that evidence of the LD carriers as beneficiaries can not discount David's alleged fraud against them. In support of this belief, Respondent offers a list of supposedly fraudulent acts committed against the telecommunications providers including:  the submission of "false names" to Pacific Bell, the use of an autodialer, and the use of shell

1   companies in Nevada to collect the dial-around compensation that was the source of the monies

2   paid to David. *See* Respondent's Brief at 7.

3       Respondent is gravely mistaken, however, because fraud presupposes either a material

4   mis-representation and or a financial loss. *See* 18 U.S.C. § 1341. Once the LD carriers are

5   properly seen as beneficiaries of David's conduct, one quickly learns that David made neither

6   material mis-representations or created circumstances in which the LD carriers lost money.

    Taken in order of the government's presentation, David relied upon a registered fictitious

7   business name -- "Jack's Pay Phone" -- to order the payphone lines from Pacific Bell. Because

8   this business was a DBA, there is no evidence of a material mis-representation to Pacific Bell.

9   Moreover, the billing systems used by Pacific Bell required both security deposits and advance

10  monthly billing which precluded David from bilking Pacific Bell or defrauding the local carrier.

11      The same holds true for the use of the autodialer. The government failed to prove at trial

12  that the use of an autodialer itself was illegal or unlawful. See RT at 282. The simple use of an

13  autodialer is not criminal.

14      Likewise, the use of shell companies is permitted under Nevada law (*See* Nevada Revised

15  Statutes, Chapter 78 et seq.) which David utilized. And despite the insinuation made by the

16  government that the shell corporations -- and yes, even the use of a false notary -- was required

17  to have the LD carriers pay the dial around compensation, this assertion rang hollow at trial

    because it was proven that David did not hide his identity in cashing the checks as he signed his

18  name to the back of these payments. *See* Exhibit 22; RT at 234. David's use of his real name in

19  cashing the checks is convincing evidence that there was no attempt to conceal or hide his

20  identity from the telcos.[6] The government's claim that David hid his identify in Nevada shell

21  companies is simply not true.

22      Once each of these charges is examined, it is apparent why the government clung to the

23  false claim that the LD carriers were victims because without this the government's case fell

24  short. Without the LD carriers and other teleco's as victims, the only alleged victim left was the

25  toll-free subscriber who David had no contact with other than a one second phone call, and to

26  whom David made no representations, false or otherwise.

27      This new evidence would have been of great interest to any reasonable juror. The fact

28  that the LD carriers did not lose money was surely important to whether David had forced others

1   to part with money unwittingly or through the use of material misrepresentations.  And yet,

2   jurors were falsely told the inapposite that the LD carriers were defrauded when this was not

3   true.  *See* RT at 822 & 824.

4

5   **(d)    David's Claims of Insufficient Evidence Are Bolstered Since They Were Raised on Direct Appeal In light of the New Evidence Presented.**

6

7   While the government argues that David's <u>Brady</u> and new evidence claims cannot be

8   heard because these issues were not raised on direct appeal, the government takes the exact

9   opposite position that David's insufficient evidence claims are procedurally barred because he

10  *did* raise these claims on direct appeal.  *See* Respondent's Brief at 8.  The government could not

11  have offered a more conflicted legal opinion.  The truth is that David did indeed raise his

12  insufficient evidence claim on direct appeal, and therefore this claim is now available on habeas

13  review.  *See* <u>Davis v. U.S.</u> (1974) 417 U.S. 333, 345, 94 S.Ct 2298 (ruling that circumstances

14  which result in a miscarriage of justice warrant review of a previously brought claim).

15  Moreover, the claim is a valid one because, as detailed in the Petition at 26-29, the lack of actual

16  victims or an intent to defraud can not support David's conviction.

17

18  **III. CONCLUSION:**

    This court has a clear choice.[7]  It can decide to bar review of David's claims based on

19  conflicting procedural arguments raised by Respondent.   Or the court can look at the real impact

20  of the government's decision to dress up the LD carriers as victims when these companies

21  actually benefitted financially from David's conduct.  The choice boils down to whether the LD

22  carriers as beneficiaries, rather than victims, fundamentally affected the fairness of the trial.

23  Undoubtedly, it did.  Of great importance, it mattered to the jurors who were told that the LD

24  carriers were victims of nearly half a million dollars;  it mattered for the jury instructions which

25  required to actual fraud;  and it mattered to the original order of restitution which had monies

26  being returned to the LD carriers.  With each one of these facts predicated on the false notion

---

27  [6] David also proved at trial that his full identity was disclosed and readily accessible to the pay phone aggregator service which interfaced with the LD carriers. *See* RT at 248-249.

28  [7]  David is expected to be released from federal custody in December 2008.  Any decision on this matter which is intended to have an effect on his on-going incarceration must be rendered prior to this date.

10

1  that the LD carriers were victims, the entire trial and penalty phase were infected with a fictitious

2  claim on who was harmed.   This outcome and the resulting prison sentence imposed on David

3  should not stand.   David's habeas should be granted.

4

5  Respectfully submitted,



6  DATED: 4/20/08

7                                                    Charles F.A. Carbone, Esq.

8

9                                                    LAW OFFICES OF CHARLES CARBONE
                                                     3128 16TH Street

10                                                   PMB 212
                                                     San Francisco, CA 94103

11                                                   Tel: 415-981-9773
                                                     Fax:  415-981-9774

12

13                                                   Attorney for Petitioner Daniel David

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28